UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VAGUELY QUALIFIED PRODUCTIONS LLC,<br><br>       Plaintiff,<br><br>  -v.-<br><br>METROPOLITAN TRANSPORTATION AUTHORITY; THOMAS F. PRENDERGAST, in his official capacity as Chairman and Chief Executive Officer of the MTA; and JEFFREY B. ROSEN, in his official capacity as the Director of the MTA Real Estate Department,<br><br>       Defendants. | 15 Civ. _____<br><br>**COMPLAINT**  [42 U.S.C. § 1983]<br><br>**DEMAND FOR JURY TRIAL** |

      Plaintiff Vaguely Qualified Productions LLC ("VQP"), by and through its undersigned counsel, brings this Complaint against Defendants Metropolitan Transportation Authority (the "MTA"), Thomas F. Prendergast, Chairman and Chief Executive Officer of the MTA, and Jeffrey B. Rosen, Director of the MTA Real Estate Department (collectively, "Defendants"), their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

**INTRODUCTION**

      1.    This case is a civil rights action brought under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, challenging Defendants' refusal and rejection of VQP's right to engage in protected speech in both a designated public forum and a limited public forum created by Defendants.

1

2. VQP seeks to post six advertisements (the "Advertisements") in the MTA subway system to promote VQP's feature film, "The Muslims Are Coming!" and the underlying thematic message of that film—that American Muslims are ordinary people.

3. After an unnecessary and unreasonable four-month delay, on or around March 25, 2015, Defendants approved VQP's Advertisements for display in the MTA subway system, which, at the time, was inarguably a designated public forum (the "MTA Approval"). The Advertisements were scheduled to run in the MTA subway system, beginning April 28, 2015, pursuant to a contract between Plaintiff and the MTA. Despite this approval, VQP's Advertisements were never displayed in the MTA subway system (the "MTA Refusal").

4. On April 29, 2015, more than five months after VQP submitted the Advertisements and more than a month after the MTA Approval, Defendants adopted a new advertising policy (the "Revised Policy") categorizing its property as a "limited public forum," permitting certain categories of advertisements (*e.g.*, "commercial advertising"), and prohibiting certain categories of advertisements (*e.g.*, advertisements that are "political in nature").

5. In apparent reliance on the Revised Policy, on May 6, 2015—more than one month after the MTA Approval and just over a week after the Advertisements were scheduled for display in the subway system—Defendants rejected VQP's Advertisements. Defendants' proffered rationale for rejecting the Advertisements was their decision that the Advertisements constituted "political" advertising prohibited under the MTA's Revised Policy (the "MTA Rejection").

6. The MTA Rejection was improper because VQP's Advertisements are "commercial advertising" under the Revised Policy and do not, in fact, fit within that policy's definition of "prohibited advertising."

7. Once Defendants sought to open a limited public forum, any restrictions on speech that fall within a designated category for which Defendants have opened the forum must be justified by a compelling government interest and narrowly drawn to serve that interest. Defendants' restriction on the Advertisements here is neither.

8. VQP seeks a declaration that the MTA Refusal violates the Free Speech Clause of the First Amendment to the United States Constitution and 42 U.S.C. § 1983 as set forth in the Complaint; a declaration that the MTA Rejection also violates the Free Speech Clause of the First Amendment to the United States Constitution and 42 U.S.C. § 1983 as set forth in the Complaint; a preliminary and permanent injunction enjoining the MTA Refusal and requiring display of the Advertisements for 28 days—the amount of time originally contracted to between VQP and Outfront Media and approved by the MTA; a preliminary and permanent injunction enjoining the MTA Rejection and requiring Defendants to display the Advertisements on MTA property because the Advertisements comply with the MTA's Revised Policy; nominal damages for the loss of VQP's constitutional rights; and compensatory damages in an amount to be proven at trial. VQP also seeks an award of reasonable costs of litigation, including attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988 and other applicable law.

## JURISDICTION AND VENUE

9. This is a civil action under 42 U.S.C. § 1983 seeking damages and injunctive relief against Defendants for committing acts, under color of law, which subject VQP to the deprivation of rights secured under the Constitution and laws of the United States. This is also an action for breach of contract and promissory estoppel pursuant to state law.

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because this action arises under the United States Constitution and 42 U.S.C. § 1983 and 1988. The declaratory and injunctive relief sought is authorized by 28 U.S.C.

§§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the legal and equitable powers of this Court.  This Court has supplemental jurisdiction over the claims arising out of state law pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the federal claims and form part of the same case or controversy.

11.  Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to VQP's claims occurred in the Southern District of New York.

## PLAINTIFF

12.  Plaintiff VQP is a for-profit limited liability company formed under the laws of the state of New York.  VQP is an award-winning and critically acclaimed video production company that creates viral videos, television and web shows, and narrative and documentary feature films.  VQP's mission is to create "smart, insightful, and comedic social justice media."

## DEFENDANTS

13.  Defendant MTA is a New York state public authority and public benefit corporation, created by New York state law.  Together with its affiliated operating agencies, the MTA provides mass transportation services in the New York City metropolitan area.

14.  As a governmental agency, the MTA must comply with the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.  For purposes of claims arising under 42 U.S.C. § 1983, the MTA is a governmental actor.

15.  At all relevant times herein, Defendant Thomas F. Prendergast was and is the Chairman and Chief Executive Officer of the MTA.  In his capacity as Chairman and Chief Executive Officer, Defendant Prendergast, on behalf of the MTA Board of Directors, was and is responsible for adopting, creating, and enforcing the policies and practices of the MTA, including the MTA's Revised Policy, which was used to reject VQP's Advertisements, as set forth in this Complaint.  He is sued in his official capacity only.

16. At all relevant times herein, Defendant Jeffrey B. Rosen was and is the Director of the MTA Real Estate Department. In his capacity as Director of the MTA Real Estate Department, Defendant Rosen was the final decision maker responsible for rejecting VQP's Advertisements and thus restricting VQP's speech as set forth in this Complaint. He is sued in his official capacity only.

## STATEMENT OF FACTS

**A.    Vaguely Qualified Productions Created a Series of Advertisements Promoting Its Commercial Feature Film and the Underlying Theme of the Film—that American Muslims are Ordinary People**.

17. In 2013, VQP produced "The Muslims Are Coming!," a feature film documentary that follows a band of American Muslim comedians as they perform stand-up comedy and interact with residents in big cities, small towns, and rural villages. Underlying the film's comedic content was the message that American Muslims are ordinary people. The film received critical praise when it was released in theaters in 2013, and is currently available for purchase to consumers through various online mediums including Netflix, Amazon, iTunes, and Xbox. The message of "The Muslims Are Coming!" is consistent with that of other works produced by VQP, as VQP's commercial content specializes in comedic, social justice media content.

18. In September 2014, after the American Freedom Defense Initiative ("AFDI") announced that it had launched a series of advertisements, VQP launched a campaign to purchase MTA advertising space that would promote the same message depicted in "The Muslims Are Coming!"—namely, that American Muslims are ordinary people. Dean Obeidallah, co-director of "The Muslims Are Coming!," described the campaign as "the next step" to the feature film. He further described the campaign as a reaction to AFDI's advertisements displayed in the MTA system.

5

19. Through the campaign, VQP raised the funds necessary to purchase advertising space in the MTA system. In October 2014, having raised the funds necessary to purchase advertising space, VQP prepared the Advertisements for proposed display in the MTA system. The posters feature satirical and tongue-in-cheek statements that depict American Muslims as having the same basic views and experiences as other Americans and promote "The Muslims Are Coming!" while emphasizing the central theme of the feature film—that American Muslims are normal, everyday Americans.  Beneath the humorous content, each poster promotes the VQP brand and refers the reader to www.themuslimsarecoming.com, the website that promotes "The Muslims Are Coming!" and through which VQP offers the film and related merchandise for sale.

20. VQP's Advertisements (after modifications required by MTA) appear as follows:

 






21. True and correct copies of the Advertisements are also attached to this Complaint as Exhibits A through F and incorporated by reference herein.

22. VQP's Advertisements convey the same non-political theme as is conveyed in the film, "The Muslims Are Coming!"—that American Muslims are ordinary people.

### B. After More than Four Months of Unnecessary Delay, Defendants Approved VQP's Advertisements for Display in the MTA Subway System, But Still Did Not Run Them.

23. The MTA, through its authorized advertising agent, OUTFRONT Media Inc. (formerly CBS Outdoor Americas Inc.) ("Outfront Media") leases advertising space on its vehicles and transportation stations. At all times described herein, Outfront Media was acting as an authorized agent for Defendants.

24. VQP first submitted the Advertisements for approval to Defendants on or around November 10, 2014, through Outfront Media. Dean Obeidallah and Negin Farsad, Director of VQP, corresponded with Outfront Media on behalf of VQP.

25. By November 17, 2014, Defendants received the initially submitted artwork for the Advertisements. Those advertisements were wholly consistent with the MTA Advertising Standards in force at that time.[1] Nevertheless, on December 8, 2014, the MTA, through its authorized agent, Outfront Media, required that VQP remove the word "penis" from a joke in one Advertisement and resubmit the artwork. VQP complied with the requirement, and on December 11, 2014, resubmitted two alternate versions of the Advertisement, including one that substituted the word "genitals" and one that omitted the joke in its entirety. Defendants received the re-submitted artwork by December 16, 2014.

---

[1] MTA Advertising Standards as amended by MTA Board, Sept. 27, 2012. ("2012 MTA Advertising Standards.") A true and correct copy of the 2012 MTA Advertising Standards is attached to this Complaint as Exhibit G and incorporated by reference herein.

8

26. After nearly one full month of additional delay, on January 15, 2015, Defendants required that VQP re-submit the Advertisements without the joke, "Please draw your penis here," apparently not recognizing that VQP had done so a month prior. VQP re-submitted the Advertisements on January 21, 2015.

27. Without citing any violation of the 2012 MTA Advertising Standards, on February 3, 2015, Outfront Media conveyed to VQP that Defendants had requested more information about VQP itself, and Outfront Media sent Defendants an Internet link purporting to show all the companies that VQP had worked with.

28. On February 6, 2015, almost three months after the Advertisements were initially submitted, Outfront Media conveyed to VQP that the Advertisements were approved by Defendants, with two exceptions. First, the phrase "stepping in poop" needed to be removed from a poster that listed things Muslims hate, even though that phrase did not violate the 2012 MTA Advertising Standards. Second, VQP was told that Defendants would not accept a poster that said, "Those terrorists are all ~~Muslims~~ nutjobs." Five days later, on February 11, 2015, Outfront Media informed VQP that the rejection of "nutjobs" was on account of the font type used for that work; VQP redesigned and resubmitted those two posters on February 28, 2015.

29. After waiting for what Outfront Media noted was an unusually long time for approval of any advertisements, on March 25, 2015, after a delay of almost another month—and more than four months after VQP initially submitted the Advertisements—VQP learned through the New York City Public Advocate's Office that all but the two revised posters were approved by Defendants. VQP reached out to Outfront Media, which initially responded that it was still waiting for approval for the two revised posters, and, later that same day, Outfront Media conveyed that Defendants had, in fact, approved the Advertisements.

30. An initial contract was approved by the MTA on or about April 3, 2015, to display the Advertisements throughout the New York City subway system from April 13, 2015, through May 10, 2015. A revised contract provided for the Advertisements to be displayed in the MTA system for 28 days from April 27, 2015 through May 24, 2015. On or around April 14, 2015, VQP returned the executed advertising contract to Outfront Media to post 144 posters of the Advertisements in 140 MTA subway stations across New York City. A true and correct copy of the executed contract (the "Advertising Contract") is attached to this Complaint as Exhibit H and incorporated herein by reference.

31. Based on the MTA Approval and the Advertising Contract, VQP entered into an agreement to print the posters in accordance with MTA specifications, hired a public relations firm, and launched a public relations campaign. Numerous media outlets reported on the advertising campaign.

32. On or around April 22, 2015, Outfront Media informed VQP that it would endeavor to post some copies of the Advertisements by April 27, 2015, but that in any event the Advertisements would be posted in the MTA subway system by April 28, 2015.

33. On April 28, 2015, Outfront Media informed VQP that the posters were being prepped for display that day.

34. Despite the MTA Approval and Outfront Media's assurances, the Advertisements were not posted in the MTA subway system on April 28, 2015, nor any day after. On May 1, 2015, Outfront Media informed VQP that someone from Defendant MTA would call them.

C. **After Months of De Facto Rejection, Defendants Formally Reject VQP's Advertisements Under the MTA's Revised Policy.**

35. On or around April 29, 2015, Defendants issued a revised advertising policy, the Revised Policy, to "establish uniform, reasonable, and viewpoint-neutral standards for the

displaying of advertising" and "convert the MTA's Property from a designated public forum into a limited public forum by excluding advertising of a political nature." A true and correct copy of the Revised Policy is attached to this Complaint as Exhibit I and incorporated herein by reference.

36. Among other things, the Revised Policy prohibits advertisements that are "political in nature, including but not limited to advertisements that . . . [p]rominently or predominately advocate or express a political message, including but not limited to an opinion, position, or viewpoint regarding disputed economic, political, moral, religious or social issues or related matters, or support for or opposition to disputed issues or causes."

37. The Revised Policy expressly allows commercial advertising, which it defines as "[p]aid advertisements that propose, promote, or solicit the sale, rent, lease, license, distribution, or availability of, or some other commercial transaction concerning, goods, products, services, or events for the advertiser's commercial or proprietary interest, or more generally promote an entity that engages in such activities."

38. On or around May 1, 2015, Defendants informed VQP via telephone that they would not permit display of the Advertisements in the MTA system.

39. On or around May 6, 2015, VQP requested a decision in writing from Defendants.

40. On or around May 6, 2015—more than one month after the MTA Approval—Defendant Rosen, on behalf of Defendants, issued a decision regarding VQP's Advertisements via email (the "Final Determination"). The Final Determination was emailed to VQP on May 7, 2015, and reads in relevant part:

> Acting on a proposal that had been under consideration since 2012, the MTA Board on April 29, 2015, adopted a new MTA Advertising Policy, effective immediately. . . . An article about the "Muslims are Coming" advertising campaign . . . described it as a response to a "campaign of hateful, anti-Muslim

11

ads in the New York City bus and subway system" sponsored by [AFDI], and an effort to make the "hateful images" of the AFDI advertisements "less culturally acceptable." . . . I have reviewed the six "Muslims are Coming" advertisement under the new MTA Advertising Policy and have concluded that they are within one of the categories of prohibited advertisements, Section IV.B.2, because they are political in nature. Taken together, the Muslims are Coming advertisements prominently or predominately advocates or expresses a political message— Vaguely Qualified Production's opinion, position, or viewpoint regarding a disputed political, moral, religious or social issue or related matters or its support for or opposition to disputed issues or causes.

41.     With these findings, Defendant Rosen, on behalf of Defendants, rejected the Advertisements.

42.     VQP's Advertisements do not "prominently or predominately" advocate a political message. The Advertisements promote a film with the simple message that American Muslims are ordinary people. This message does not advocate or express an "opinion, position, or viewpoint regarding disputed economic, political, moral, religious or social issues or related matters," nor does it support or oppose a "disputed issue[] or cause[.]"

43.     Rather, the Advertisements proposed by VQP, a for-profit company, prominently advertise a central theme in the feature film, "The Muslims Are Coming!" Each advertisement includes the text, "For More Visit: www.themuslimsarecoming.com," encouraging viewers to visit a website featuring information about the film, a promotional video clip, and links to download the film from Amazon, iTunes, and Xbox. VQP's Advertisements promote and solicit the sale of VQP's commercial product—"The Muslims Are Coming!" Because a central theme in the film is American Muslim comedians making their way through the United States, the Advertisements contain satirical and ironic statements that depict American Muslims as ordinary people.

**FIRST CLAIM FOR RELIEF**

**(Violation of the First Amendment Under 2012 MTA Advertising Standards)**

44. VQP hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs, as if set forth fully herein.

45. Section 1983 of Title 42 of the U.S. Code provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C. § 1983.

46. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I.

47. The First Amendment's protection of the freedom of speech applies to the states through its incorporation into the due process clause of the Fourteenth Amendment.

48. Defendants violated VQP's constitutional rights by purposefully and unreasonably delaying the approval of VQP's Advertisements for four months. This four-month delay in approving VQP's Advertisements was a de facto and unconstitutional act of prior restraint and a content-based rejection of the Advertisements.

49. After this unconstitutional rejection of the Advertisements, on or around March 25, 2015, Defendants approved VQP's Advertisements for display in the MTA subway system, the MTA Approval.

50. Despite the MTA Approval, Defendants again refused to post the Advertisements on the date specified under the Advertising Contract. The refusal to post the Advertisements constituted an unconstitutional rejection of the Advertisements.

51. On May 7, 2015—more than a month after the MTA Approval—Defendants informed VQP that its Advertisements were rejected because they did not comply with the MTA's Revised Policy.

52. Defendants have deprived VQP of its right to engage in protected speech by refusing to display VQP's Advertisements for the 28-day period originally specified in the Advertising Contract between VQP and Outfront Media, and approved by the MTA, in violation of the Free Speech Clause of the First Amendment to the United States Constitution as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

53. As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment to the United States Constitution, VQP has suffered irreparable harm, including the loss of their Constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

## SECOND CLAIM FOR RELIEF

**(Violation of the First Amendment Under The Revised Policy)**

54. VQP hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs, as if set forth fully herein.

55. With its Revised Policy, Defendants seeks to convert the MTA's property from a designated public forum into a limited public forum.

56. When the government creates a limited public forum, the level of protection afforded to speech will depend on whether or not that speech falls within or outside of the designated category for which the government opened the forum.

57. In a limited public forum, strict scrutiny is accorded to restrictions on speech that fall within the designated category for which the forum has been opened. Restrictions on speech that fall outside that designated category must only be viewpoint neutral and reasonable.

58. VQP's Advertisements fall within a designated category for which Defendants have opened the forum. Specifically, VQP's Advertisements are "commercial advertising," permitted under the Revised Policy, because, in a manner consistent with VQP's brand, the Advertisements "promote" and "solicit the sale" of VQP's product, "The Muslims Are Coming!," by promoting the underlying message of the film—that American Muslims are ordinary people. The Advertisements direct viewers to a website that promotes a commercial feature film produced by a for-profit company. Therefore, the Advertisements fit within Defendants' definition of "commercial advertising" contained in the Revised Policy.

59. VQP's Advertisements are not "prohibited advertising" under the Revised Policy because they are not "political in nature" and do not "prominently or predominately" advocate a political message. VQP's Advertisements, which promote a truism that American Muslims are ordinary people, do not advocate or express an "opinion, position, or viewpoint regarding disputed economic, political, moral, religious or social issues or related matters," nor do they support or oppose a "disputed issue[] or cause[.]"

60. The MTA Rejection of VQP's Advertisements—advertisements that fall within a designated category for which Defendants have opened the forum—is not justified by a compelling government interest and is not narrowly drawn to serve that interest.

61. By reason of the MTA Rejection, which includes Defendants' erroneous interpretation of the Revised Policy, which was created, adopted, and enforced under color of state law, Defendants have deprived VQP of its right to engage in protected speech in a limited

public forum in violation of the Free Speech Clause of the First Amendment to the United States Constitution as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

62. As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment to the United States Constitution, VQP has suffered irreparable harm, including the loss of their Constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

### THIRD CLAIM FOR RELIEF

### (Breach of Contract)

63. VQP hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs, as if set forth fully herein.

64. On or around April 14, 2015, VQP and Outfront Media entered into the Advertising Contract, approved by the MTA. The Advertising Contract is a valid, enforceable, binding written agreement pursuant to which Defendants agreed to display VQP's Advertisements in the MTA system from April 27, 2015, through May 24, 2015.

65. VQP has duly performed all of its obligations under the Advertising Contract.

66. Defendants failed to perform by failing to display VQP's Advertisements in the MTA system, for any period of time, in breach of the Advertising Contract.

67. As a direct and proximate result of Defendants' breach of the Advertising Contract, VQP has suffered damages.

## FOURTH CLAIM FOR RELIEF

### (Promissory Estoppel)

68. VQP hereby re-alleges and incorporates by reference the allegations contained in the preceding paragraphs, as if set forth fully herein.

69. Defendants clearly and unambiguously promised to display VQP's Advertisements in the MTA system.

70. VQP reasonably and foreseeably relied on Defendants' promise to display VQP's Advertisements in the MTA system, for example, by entering into the Advertising Contract, entering into an agreement to print the posters in accordance with MTA specifications, hiring a public relations firm, and launching a public relations campaign.

71. As a direct and proximate result of VQP's reliance on Defendants' promise, VQP has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, VQP asks this Court:

A) to declare that Defendants violated the First and Fourteenth Amendments to the United States Constitution as set forth in this Complaint;

B) to preliminarily and permanently enjoin the MTA Refusal and require display of the Advertisements on MTA property for a consecutive period of no less than 28 days—the amount of time specified in the Advertising Contract between VQP and Outfront Media and approved by the MTA;

C) to preliminarily and permanently enjoin the MTA Rejection and require Defendants to display the Advertisements on MTA property because the Advertisements comply with the MTA's Revised Policy;

17

D)	to award VQP nominal damages for the loss of its constitutional rights as set forth in this Complaint;

E)	to award VQP compensatory damages in an amount to be proven at trial;

F)	to award VQP its reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law; and

G)	to grant such other and further relief as is just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Vaguely Qualified Productions, LLC hereby demands a jury trial.

Dated: June 25, 2015
      New York, New York

      Respectfully submitted,

      */s/ Elizabeth Morris*
      Elizabeth Morris
      LATHAM & WATKINS LLP
      885 3rd Avenue
      New York, NY 10022
      Telephone: (212) 906-1200
      Facsimile: (212) 751-4864

      Glenn Katon
      Adil Haq (*pro hac vice* to be filed)
      Madihha Ahussain (*pro hac vice* to be filed)
      MUSLIM ADVOCATES
      P.O. Box 71080
      Oakland, CA 94612
      Telephone: (415) 692-1484
      Facsimile: (415) 765-1774

      Abid R. Qureshi (*pro hac vice* to be filed)
      Andrew P. Galdes (*pro hac vice* to be filed)
      Brigid T. Morris (*pro hac vice* to be filed)
      LATHAM & WATKINS LLP
      555 11th Street NW, Suite 1000
      Washington, DC 20004
      Telephone: (202) 637-2200
      Facsimile: (202) 627-2201

      Tanya Syed (*pro hac vice* to be filed)
      LATHAM & WATKINS LLP
      355 S. Grand Avenue, Suite 100
      Los Angeles, CA 90071
      Telephone: (213) 485-1234
      Facsimile: (213) 891-8763

      Yusuf Z. Zakir (*pro hac vice* to be filed)
      LATHAM & WATKINS LLP
      650 Town Center Drive, 20th Floor
      Costa Mesa, CA 92626
      Telephone: (714) 540-1235
      Facsimile: (714) 755-8290

      Attorneys for Plaintiff Vaguely Qualified Productions LLC